IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CAMARA KARAMATIC** | § | |
| | § | |
|   **Plaintiff,** | § | |
| | § | |
|           v. | § | **CIVIL ACTION NO: 3:21-cv-2304** |
| | § | |
| **PEYTON RESOURCE GROUP, L.P.** | § | |
| | § | |
|   **Defendant.** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

    Plaintiff Camara Karamatic ("Plaintiff") presents this Original Complaint against Defendant Peyton Resource Group, L.P. ("PRG" or "Defendant") and for causes of action would show the Court as follows:

### I.

### INTRODUCTION

    1.01    Plaintiff brings this action for sex discrimination, sex harassment, and unlawful retaliation under Title VII and Chapter 21 of the Texas Labor Code.

### II.

### PARTIES

    2.01    Plaintiff is a citizen and resident of the State of Texas. Plaintiff resides at 201 Oldham Avenue, Waxahachie, Texas 75165.

    2.02    Defendant PRG is a limited partnership organized under the laws of Texas. Defendant's headquarters are located at 2222 South Service Road, Suite 200, Dallas Texas 75201. Defendant may be served through its Registered Agent for Service, Brian A. Mayhew, located at 220 E. Las Colinas Blvd, Suite 100, Irving, TX 75039, or wherever found.

## III.

## JURISDICTION AND VENUE

3.01    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, and pendant and supplemental jurisdiction of the common law claims.

3.02    Plaintiff has satisfied all conditions precedent for the commencement of this action, having filed a timely EEOC charge and receiving a notice of right to sue. The instant complaint has been filed within 90 days of Plaintiff's receipt thereof.

3.03    Venue for all causes of actions stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. § 1391. This Court also has pendent jurisdiction over state law claims.

## IV.

## FACTUAL ALLEGATIONS

4.01    Plaintiff is a Caucasian female.

4.02    On November 21, 2019, Plaintiff signed an offer letter with PRG to begin work on December 30, 2019 as a Business Development Manager, so as not to threaten the team initially. In January 2020, PRG gave Plaintiff the new title of Vice President Client Services, after coming on board and establishing a relationship with the other members of the team.

4.03    At the time of hire, Plaintiff's base salary was $70,000.00 plus $55,000.00 guaranteed Commission. She also was given a $9,000.00 car allowance beginning February 7, 2020, for a total of $134,000 annual compensation.

4.04    In February 2020, Defendant hired a Michael Pendleton ("Pendleton") as Vice-President to manage the IT portion of Defendant's company. Pendleton was Plaintiff's peer. Plaintiff had been hired to manage and grow the Accounting and Finance Division. Pendleton was

hired laterally to manage and grow the IT Division. Defendant's business plan was that Plaintiff and Pendleton work in tandem as lateral colleagues. Their duties would be the same in their respective divisions.

4.05   Shortly after Pendleton's hiring, members of Plaintiff's team left the company. Consequently, Plaintiff had to rebuild her team virtually from scratch.

4.06   Immediately upon his reporting to work with Defendant, Pendleton immediately began making numerous racist and inappropriate sexual comments in the workplace. At a morning meeting when discussing potential job candidates, Pendleton referred to an Asian Green Card job candidate as a "slant eyed mother f*****".

4.07   In the morning, Plaintiff and Pendleton would meet in Plaintiff's office before the day got started. Pendleton would say such things as "Well I had an interesting evening" and then become very vocal about his sex life. Pendleton would discuss events of the "night before". On more than one occasion, Pendleton would tell Plaintiff how his girlfriend would beg to let her give him blow jobs. Pendleton would also go into detail how he was not interested in having sex and how she would come in naked, and he would turn her away.

4.08   Plaintiff repeatedly asked Pendleton not to speak about that to her. Pendleton would apologize and assured Plaintiff that he would stop. Then Pendleton would continue to make sexually explicit comments about his sex life, and referred to one of his subordinates as "hot Kari".

4.09   In another conversation within the office, Pendleton and another employee were comparing past women they knew. Pendleton loudly referred to "the t*** on that woman" (referring to her breasts). These comments were not only heard by Plaintiff, but also by her office administrator.

4.10   In yet another conversation within the office, Pendleton and Mayhew were joking about how Erica Albert, a subordinate in the office, would 'probably have an orgasm when she saw

**Original Complaint**    **Page 3**

her desk was decorated for her birthday, the first in probably 5 years'.

4.10   Plaintiff heard talk around the office that Pendleton had a past practice of harassing women at his last place of employment.

4.11   Despite his involvement, Plaintiff reported Pendleton's racist and sexually explicit comments to her supervisor and PRG's CEO Brian Mayhew ("Mayhew"), on multiple occasions. Plaintiff explained to Mayhew that Pendleton's crude behavior was both distracting and disruptive.

4.12   Plaintiff complained that Pendleton's disruptive behavior was undoing Plaintiff's efforts to develop a brand and reputation. Plaintiff went on to explain Pendleton made her uncomfortable.

4.13   In the last meeting before Plaintiff's termination, on June 25, 2020, Plaintiff reported Pendleton's conduct again. Mayhew had asked Plaintiff about the progress of her team. Plaintiff explained again that she was not comfortable with the work environment in the office due to the conversations and comments by Pendleton. Mayhew replied that he had already spoken to Pendleton about his inappropriate behavior, but acknowledged that he probably needed to talk to Pendleton again. Mayhew then allowed Plaintiff to work from home so she would no longer be exposed to the environment and conversations involving Pendleton.

4.14   Two weeks later, on July 8, 2020, Mayhew asked Plaintiff to join him for lunch so that they could "catch up". During this luncheon, Mayhew presented Plaintiff with a new, adverse employment agreement which reduced her overall compensation by over $34,000 and took away her monthly car allowance of $750. Under the same agreement, Plaintiff was also given a draw that was simply too difficult to repay, and further reduced her salary by approximately $35,000 in commissions. Defendant had previously told Plaintiff that the commissions were guaranteed. Plaintiff signed the new agreement because it was the only way that Plaintiff could keep her job, and she simply could not afford to not work.

4.15   On July 24, 4040, Plaintiff's next paycheck did not contain her earned commission per the latest agreement that Plaintiff had just signed. Plaintiff emailed Mayhew asking for clarification. Mayhew replied that he was not calculating anything in Plaintiff's current pipeline transactions to pay out commission. Mayhew then told Plaintiff that he was also not considering temporary placements to pay out, which had historically been a part of Plaintiff's sales.

4.16   Mayhew told Plaintiff that COVID was the main reason why significant numbers were not coming in the door.  Yet based on Plaintiff's weekly production reports, Plaintiff was in line, if not above on revenue.  Pendleton's name is nowhere on those reports.  This is because Pendleton had not secured a placement for any revenue at that time.

4.17   That same day, Plaintiff retained legal counsel.  On July 27, 2020, Plaintiff's counsel served an initial demand on Mayhew pointing out that Plaintiff had been a victim of unlawful harassment and retaliation.

4.18   On July 28, 2020, Mayhew asked Plaintiff to sign an amended Commission Sales Agreement stating it would only pay out for new spread (placements) and which did not apply to current placements. Plaintiff signed the amended Commission sales Agreement on July 29, 2020 with the statement "I reserve all remedies I am entitled under Title VII and Chapter 21 of the Texas Labor Code".

4.19   On July 30, 2020 at approximately 4:40 p.m., Mayhew texted Plaintiff telling her to check her personal email. When Plaintiff opened her personal email, she found an email from Mayhew telling her that she was terminated and citing "at-will employment" as the reason.

4.20   Plaintiff was formally terminated on July 30, 2020.  Nowhere in the termination notice is there any reference to a decline in productivity or failing to meet expectations.

4.21   Defendant's treatment and response to Plaintiff's reports of Pendleton's sexual harassment and racial slurs demonstrate that Plaintiff was a victim of unlawful sexual harassment

and retaliation. This has caused Plaintiff to suffer from chronic emotional distress.

4.22   In an email exchange between Mayhew and Plaintiff, Defendant has conceded that this new contractual arrangement with Plaintiff was not a company-wide policy, but rather a specific arrangement made only with Plaintiff. The timing of this specific arrangement, and in the absence of any valid business reason for its introduction, further supports the claim of retaliation.

4.23   Immediately before her termination, Plaintiff's legal counsel wrote to the CEO and enclosed a draft EEOC charge which outlined the specific violations under Title VII and Chapter 21 of the Texas Labor Code.

## V.

## FIRST COUNT

### DISCRIMINATION BECAUSE OF SEX IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000(E) et seq. AND CHAPTER 21 OF THE TEXAS LABOR CODE

5.01   The foregoing paragraphs of this Complaint are incorporated in this count as fully as if set forth at length herein.

5.02   Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f) Title VII and belongs to a class protected under the statute, namely females.

5.03   Defendant is an employer within the meaning of 42 U.S.C. § 2000e(d) Title VII since it employs more than fifteen employees.

5.04   Defendant is also an employer within the meaning of Chapter 21 of the Texas Labor Code.

5.05   Defendant intentionally discriminated against Plaintiff because of her sex in violation of Title VII and Chapter 21 of the Texas Labor Code by creating or knowingly allowing to exist a work environment that was hostile to women.

5.06   Plaintiff has timely filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") and the Texas Workforce Commission. On August 4, 2021,

Plaintiff received her Notice Right to Sue Letter**.**  Plaintiff has timely filed suit against Defendant within 90 days of her receipt of the Notice of Right to Sue.

5.07   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the following injuries and damages:

a. Plaintiff suffered mental anguish and emotional distress, as well as loss of enjoyment of life, inconvenience, and general damages; and

b. Plaintiff suffered lost wages and related benefits.

5.08   Plaintiff is entitled to an award of attorneys' fees and costs under Title VII, U.S.C. §2000e-5(k).

5.09   Defendant violated Title VII and Chapter 21 of the Texas Labor Code by discriminating against Plaintiff in connection with compensation, terms, conditions, or privileges of employment because of Plaintiff's sex.  Plaintiff was subjected to a continuous course of harassment and worked in a sexually hostile environment.

5.10   Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non-pecuniary damages.  Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally protected rights.  Plaintiff is therefore also entitled to recover punitive damages.

## VI.

## SECOND COUNT

## UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(E) ET SEQ and CHAPTER 21 OF THE TEXAS LABOR CODE.

6.01    The foregoing paragraphs of this Complaint are incorporated in this count as fully as if set forth at length herein.

6.02    Pursuant to 42 USC section 2000(E) *et seq*., an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who opposes a discriminatory practice; makes or files a charge; files a complaint; or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

6.03    The same provision I found in Chapter 21.055 of the Texas Labor Code.

6.04    Defendant retaliated against Plaintiff after she complained to Defendant about the unwelcome advances and sexually hostile environment in the workplace by terminating Plaintiff's employment.

6.05    Defendant terminated Plaintiff's employment on July 30, 2020.  Defendant gave no reason to Plaintiff for the summary termination. The temporal proximity between Plaintiff's earlier complaints of sex harassment and hostile work environment, and her adverse actions and termination in the absence of any valid reason, constitutes unlawful retaliation for Plaintiff's protected activity. Plaintiff had committed no wrongdoing. Nor had Plaintiff been counseled or disciplined for any deficiency in her performance.

6.06.    Defendant knowingly and willfully retaliated against Plaintiff for her protected activity in violation of Title VII.

6.07   Defendant's conduct was malicious and/or taken with reckless disregard for Plaintiff's rights.  It was foreseeable by Defendant that Plaintiff would suffer harm as a result of the retaliation and discrimination.

## VII.

## JURY TRIAL DEMANDED

7.01   Plaintiff demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have and recover and the following relief against Defendant:

(1)   Judgment for actual damages in the amount of past and future lost earnings and benefits, and damages to past and future earnings capacity;

(2)   Judgment for back pay and front pay as allowed by law;

(3)   Judgment for past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses;

(4)   Damages for past and future mental anguish, emotional distress, and physical distress;

(5)   Exemplary damages in an amount to be determined by the trier of fact;

(6)   Prejudgment and Post-judgment at the maximum legal rate;

(7)   All costs of court;

(8)   Attorneys' fees; and

(9)   Such other and further relief to which Plaintiffs may be justly entitled.

Date:  September 28, 2021   Respectfully submitted,

        **KILGORE & KILGORE, PLLC**

By:  */s/ Nicholas A O'Kelly*
     Nicholas A O'Kelly
     State Bar No. 15241235
     **KILGORE LAW CENTER**
     3109 Carlisle
     Dallas, Texas 75204
     (214) 379-0827 - Telephone
     (214) 953-0133 – Telecopier
     email: nao@kilgorelaw.com

     **ATTORNEY FOR PLAINTIFF**
     **CAMARA KARAMATIC**